UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ABDULLAH Y. SALAHUDDIN,

                Petitioner,

      - against -

DAVID UNGER, Superintendent,
Orleans Correctional Facility,

                Respondent.

                         MEMORANDUM
                          AND ORDER
                      04 CV 2180  (JG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
A P P E A R A N C E S:

       ABDULLAH Y. SALAHUDDIN
            No. 78-A-1148
            Mid-State Correctional Facility
            P.O. Box 2500
            River Road
            Marcy, New York  13403-0216
            Petitioner *Pro Se*

       ELIOT SPITZER
            Attorney General
            Office of the Attorney General
            120 Broadway, 22nd Floor
            New York, New York 10271-0332
       By:    Michael P. King
            Attorney for Respondent

JOHN GLEESON, United States District Judge:

      Abdullah Y. Salahuddin petitions for a writ of habeas corpus, challenging a

decision of the New York State Division of Parole ("Parole Board") on July 17, 2001 denying his

release to parole supervision.  I heard oral argument on November 12, 2004.  For the reasons set

forth below, the petition is denied.

BACKGROUND

On July 4, 1976, at approximately 9:30 p.m., Victoria Sostre and Celiano Perez were working at a grocery store owned by Rudolfo Montoya in Brooklyn when Salahuddin and a male companion entered the store. Salahuddin placed a gun to the back of Perez's head and announced a hold-up. When Rudolfo Montoya, the owner of the store, entered the store from a back room, Salahuddin pointed the gun at him. At that point Perez attempted to seize the gun from Salahuddin. A struggle ensued, which moved out into the street. When Montoya came out of the store, Salahuddin shot him in the head and killed him.

On January 26, 1978, a jury found Salahuddin guilty of second degree murder (felony murder) and second degree manslaughter. He was sentenced to concurrent terms of imprisonment of twenty-five years to life and seven and one-half to fifteen years for the two counts, respectively. His conviction was affirmed by the Appellate Division, Second Department. *See People v. Murph*,[1] 454 N.Y.S. 2d 567 (2d Dep't 1982). The New York Court of Appeals denied leave to appeal the following year. *See People v. Murph*, 59 N.Y.2d 678 (1983). A collateral attack of the conviction in state court was unsuccessful, and Salahuddin's federal habeas corpus challenge to the conviction was rejected by me in *Salahuddin v. Strack*, 97 Civ. 5789, 1998 WL 812648 (E.D.N.Y. August 12, 1998).[2]

---

[1]    Salahuddin was also know as "James Murph."

[2]    I am only briefly summarizing the procedural history of petitioner's case here because the details preceding the parole hearing at issue in this petition are not directly relevant here and can be found in my memorandum and order dated August 12, 1998 denying petitioner's habeas petition. *See Salahuddin v. Strack*, No. 97 Civ. 5789, 1998 WL 812648 (E.D.N.Y. August 12, 1998).

On July 17, 2001, Salahuddin appeared before the Parole Board for the first time and was examined by Commissioner Doyle. (Pet'n, Ex. 7 ("Hr'g Tr."), at 2.) He was denied parole and ordered held another 24 months. The decision, in its entirety, was as follows:

> After careful consideration of your entire file and your interview, parole is denied based upon the severity of your instant offenses, your history of substance abuse and your unacceptable institutional behavior. Your instant offenses are murder second and manslaughter second. While participating in an armed robbery of a grocery store, you shot and killed one of the employees. The Panel notes that you have a history of substance abuse that led you to commit criminal behavior. While incarcerated, your institutional behavior has been unacceptable. Of particular concern to this Panel is your tier three infraction committed less than one year ago relating to violent conduct. Discretionary release is inappropriate at this time.
> Guidelines are unspecified. He is ineligible for a certificate of relief.

(Hr'g Tr. at 14.) Salahuddin was set to reappear before the Board in July of 2003. (*Id.*)

The "Tier 3" infraction alluded to by the Parole Board was discussed at Salahuddin's parole hearing. In December of 2000, Salahuddin was found guilty of conspiring to assault another inmate in a power struggle within the Muslim community in the prison. (Hr'g Tr. at 7.) At the hearing before the Parole Board, Salahuddin stated, "I didn't actually assault any individual but when you are charged with a conspiracy to assault a person, I was informed that if you are found guilty, you are found guilty as though you actually assaulted the person. So I was found guilty of a violent conduct." (*Id.* at 7-8.)

Assisted by counsel, Salahuddin filed an administrative appeal of the Board's decision, arguing that the decision was arbitrary, capricious, and in violation of applicable law. (King Decl., Ex. D.) The Parole Board's decision was affirmed by the Appeals Unit on May 9, 2002. (*Id.*, Ex. E.) On June 18, 2002, Salahuddin filed an Article 78 motion in state court, which was dismissed in a decision dated September 20, 2002. (*Id.*, Ex. I.) The state court held

that the Board stated sufficient grounds for denying parole when it cited the violent conduct

underlying Salahuddin's convictions, his history of substance abuse, and his disciplinary record.

It held that "[t]he commissioners also had discretion to place greater weight on these cited factors

than they placed on his performance in institutional programs, proposed release plans, and the

references from people who supported his application for release." (*Id.* at 2.)  Accordingly, it

found that fair consideration was given by the Board to the factors listed in New York Executive

Law § 259-i(2)(c), the statutory provision governing parole.  (*Id.*)

The court also held that Salahuddin's claim under the Ex Post Facto Clause had

no merit, citing *Matter of Rentz v. Herbert*, 615 N.Y.S.2d 178 (4th Dep't 1994).  In *Matter of*

*Rentz*, the 4th Department held that the application of Executive Law § 259-i to a prisoner who

had committed his crime before the amendment to the statute did not violate the Ex Post Facto

Clause.

> The added statutory language requiring the Board to find that the release of an
> applicant "will not so deprecate the seriousness of his crime as to undermine
> respect for law" did not impose a new or additional obstacle to the granting of
> parole, but merely codified existing case law.

*Id.* (citations omitted).  Finally, the Court held that the Board's review and reliance on

Salahuddin's criminal history was proper under the law.  It also noted that the Board was notified

of the fact that one of Salahuddin's prison disciplinary infractions had been expunged.  The court

concluded that Salahuddin failed to show that the Board's decision was made "in violation of the

law or not supported by the record and tainted by irrationality bordering on impropriety." (King

Decl., Ex. I at 3.)

In a brief dated November 30, 2002, Salahuddin appealed the denial of his

motion. While the appeal was pending, he appeared before the Parole Board again on July 16,

2003. The Appellate Division for the Fourth Department unanimously dismissed the appeal of

the decision as moot. (King Decl., Ex. O.) Salahuddin's application for leave to appeal to the

New York Court of Appeals was denied. (King Decl., Ex. R.)

In the instant petition, Salahuddin raises the same claims he raised in his Article

78 motion. Specifically, he asserts that: (1) the denial of parole was arbitrary and capricious

because the Parole Board relied solely on the serious nature of his offense; (2) the Parole Board

failed to provide an adequate explanation for its decision; (3) he was denied equal protection

under the law; (4) the Parole Board relied on incomplete, inaccurate, false and erroneous

information; (5) the Parole Board followed an executive and unwritten policy influenced by

political pressure to deny parole to violent offenders; (6) the Parole Board used a double standard

in denying him parole; (7) the parole denial violated the Ex Poste Facto Clause of the United

States Constitution; (8) the Parole Board improperly re-sentenced Salahuddin by denying him

parole; and (9) he was denied the effective assistance of counsel in connection with his Article 78

proceeding.

DISCUSSION

A.      The Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has

narrowed the scope of federal habeas review of state convictions where the state court has

adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the

AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the

reviewing court may grant habeas relief only if the state court's decision "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."[3]  28 U.S.C. § 2254(d)(1).  The Supreme Court has

interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the

dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."

*Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d

Cir. 2001).

    A decision is "contrary to" clearly established federal law, as determined by the

Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if the state court decides a case differently than [the

Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  A

decision is an "unreasonable application" of clearly established Supreme Court law if a state

court "identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of [a] prisoner's case."  *Id.*  "In other words, a

federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a

set of facts different from those of the case in which the principle was announced.'"  *Wiggins v.

Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

    There is "force" to the argument "that if a habeas court must extend a rationale

before it can apply to the facts at hand then the rationale cannot be clearly established at the time

of the state-court decision"; "[§ ] 2254(d)(1) would be undermined if habeas courts introduced

---

[3]   Habeas relief is also warranted where the state court's decision "was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. § 2254(d)(2).

rules not clearly established under the guise of extensions to existing law." *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004). The Supreme Court has concluded, however, that while "the difference between applying a rule and extending it is not always clear," "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Id.*

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 540 U.S. 1, 4 (2003) (*per curiam*) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."); *Wiggins*, 539 U.S. at 520-21 (same). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). The Supreme Court recently explained that the specificity with which the rule of law at issue is defined may affect whether the state court's determination was "unreasonable":

> [T]he range of reasonable judgment can depend in part on the
> nature of the relevant rule. If a legal rule is specific, the range may
> be narrow. Applications of the rule may be plainly correct or
> incorrect. Other rules are more general, and their meaning must
> emerge in application over the course of time. Applying a general
> standard to a specific case can demand a substantial element of
> judgment. As a result, evaluating whether a rule application was

> unreasonable requires considering the rule's specificity.  The more
> general the rule, the more leeway courts have in reaching outcomes
> in case by case determinations.

*Alvardo*, 541 U.S. at 664.

This standard of review applies whenever the state court has adjudicated the

federal claim on the merits, regardless of whether it has alluded to federal law in its decision.

As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicates"
> a state prisoner's federal claim on the merits when it (1) disposes of
> the claim "on the merits," and (2) reduces its disposition to
> judgment.  When a state court does so, a federal habeas court must
> defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the
> state court's decision on the federal claim–even if the state court
> does not explicitly refer to either the federal claim or to relevant
> federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

B.    Right to Due Process in Parole

"In order for a state prisoner to have an interest in parole that is protected by the

Due Process Clause, he must have a legitimate expectancy of release that is grounded in the

state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (citations omitted).

"The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of

release." *Id.* at 171.  There is no entitlement to release based on a finding of specified conditions

in the New York statute governing parole. *See* N.Y. Exec. Law § 259-i.  Instead, the Parole

Board has discretion in making release determinations. *See id.*  Thus, the Second Circuit has

held that prisoners in the New York state system have no liberty interest in parole, and that, "the

protections of the Due Process Clause are inapplicable." *Barna*, 239 F.3d at 171.

The Second Circuit has not addressed directly the issue of whether a prisoner has substantive due process rights related to parole in the New York system. Courts have, however, found that prisoners cannot properly be denied parole for arbitrary or constitutionally impermissible reasons. *See, e.g., Burkette v. Love*, 89 F.3d 135, 140 (3d Cir. 1996); *Candelaria v. Griffin*, 641 F.2d 868, 870 (10th Cir. 1981). I need not decide this difficult issue because even if substantive due process rights attached to parole decisions, as explained below, those rights were not violated here.

C.      Mootness

Salahuddin appeared before the Parole Board first on July 17, 2001, was denied parole and ordered held another 24 months. He appealed that decision and exhausted it in the state system.[4] Salahuddin appeared before the Parole Board again on July 16, 2003. He filed the instant petition dated May 17, 2004 and it "seeks to challenge his parole board determination of July 17, 2001 which denied his release to parole supervision and subsequent methods of parole denial." (Pet'n at ¶ 5.)

Respondent argues that a subsequent parole hearing renders moot any claims challenging denial of parole at a prior hearing. Salahuddin contends that I should hear his claim regardless because the state's policy with respect to individuals classified as violent felons creates a strong likelihood that Salahuddin will continue to be denied parole on this basis, and that his review every 24 months allows the state to evade judicial review. (Pet'r Reply at 3-4.)

---

[4]      Exhaustion of a denial of parole under New York law requires a petitioner to "first file an administrative appeal with the Division of Parole's Appeals Unit, . . . [and] [i]f that appeal is denied, he must seek relief in state court pursuant to Article 78." *Defino v. Thomas*, 02 Civ. 7413, 2003 WL 40502, at *2 n.1 (S.D.N.Y. Jan. 2, 2003) (internal citation omitted). A denial of the Article 78 petition must be appealed to the highest state court.

Salahuddin's argument has some merit. He was not able to secure a decision on the merits of his Article 78 petition from the Appellate Division, Second Department because over 24 months passed from the date of his hearing to the decision of the Appellate Division, so that he had already been before the Parole Board again, mooting his appeal.

However, I need not decide this issue because the petition lacks merit.

D.      Salahuddin's Claims

1.      The Basis for the Parole Board's Decision

Salahuddin argues that his denial of parole was arbitrary and capricious because the Parole Board relied solely on the serious nature of his offense. He also argues that the Board relied on inaccurate information by considering his Tier 3 infraction of conspiracy to assault an inmate in making its determination.

New York Executive Law § 259-i governs the procedures and conduct of the state parole board. The statute states, in relevant part:

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the guidelines . . . shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) [issues related to deportation]; and (v) any statement made to the board by the crime victim or the victim's representative . . .

N.Y. Exec. Law § 259-i(2)(c)(A).  Additionally, the Board "shall consider" "the seriousness of

the offense" and "prior criminal record, including the nature and pattern of offenses, adjustment

to any previous probation or parole supervision and institutional confinement."  *Id.*, by

incorporation of New York Executive Law § 259-i(1)(a).

      Salahuddin's characterization of the Parole Board's decision is inaccurate.  First,

the Board reviewed Salahuddin's file during the course of the hearing, which included a review

of his criminal history (Hr'g Tr. at 2-6), his institutional record (*id*. at 7-8), his prospects for

employment upon release (*id*. at 8-9), and his letters of support (*id*. at 9).  Finally, the Board

noted Salahuddin's various letters of support as well as its "chief concern" regarding his parole:

> You have a very violent crime.  There is positives [sic] to your file and negatives
> to your file.  Of course, I brought up to you that the negatives that concern me, the
> nature of your offense is a strong concern as well when you see allegations of
> violent conduct while incarcerated.  That raises a concern as well.

(*Id.* at 9-10.)  In response, Salahuddin described his reformation at length, ending with the fact

that he "already successfully completed parole outside before."  (*Id.* at 12.)  The Parole Board

Officer then noted, "[y]ou successfully completed parole but you re-engaged in criminal behavior

afterwards,"  which Salahuddin acknowledged as true.  (*Id.*)  While the Board's decision finds

the violent nature of Salahuddin's crime to be an important factor in denying parole, the board

also notes his history of substance abuse as well as his institutional behavior.  (Hr'g Tr. at 14.)

      Second, as held by the state court (*see* King Decl., Ex. I at 2.), the law does not

forbid the Board from deciding that the seriousness of an offense and a prisoner's institutional

record outweigh his positive performance in prison program, his references and his release plans.

*See* N.Y. Exec. Law § 259-i.  In fact, the statute specifically states that "[d]iscretionary release on

parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined," and that the Board must consider "the seriousness of his crime." N.Y. Exec. Law § 259-i(2)(c)(A).

The Board's consideration of Salahuddin's Tier 3 infraction was not error at all, let alone error that rises to the level of making the decision arbitrary and capricious. The Board specifically found that it was particularly concerned with the infraction, in part because it had occurred in December of 2000, less than one year before the parole hearing. (Hr'g Tr. at 14.) Salahuddin argues that this infraction should have been expunged and that the Board should not have considered it in making its determination. He states that, with respect to the inmates charged, the infraction was dismissed and expunged from their records. (Pet'r Reply at 14-15.) He also argues that he filed an Article 78 motion for the same relief.

Even if true, these allegations do not render the Board's decision arbitrary and capricious. The information in Salahuddin's file documented an infraction by him -- conspiracy to assault an inmate. While he may have been appealing the finding at the time of the hearing, which he mentioned to the Board, that appeal did not preclude the Board from relying on the infraction.

Accordingly, the state court's decisions that (1) the Board gave fair consideration to the statutory factors in New York Executive Law § 259-i(2)(c), and (2) the Board's reliance on Salahuddin's entire criminal history, including the Tier 3 infraction in 2000, was consistent with New York law governing parole hearings, were neither contrary to nor unreasonable applications of federal law.

2.      Guidance for Future Parole

Salahuddin argues that the Board's explanation for denying him parole was inadequate, in part because he did not receive guidance on how he can behave to be eligible for parole in the future. Salahuddin provides no statutory basis for his assertion that the Board must guide him on becoming eligible for parole in the future. Salahuddin's constitutional rights with respect to parole are limited to a fair hearing and an explanation for the Board's denial of his release. *Greenholtz*, 442 U.S. at 7. Salahuddin received both. Accordingly, Salahuddin's claim is denied.

3.      Differential Treatment between Violent and Nonviolent Offenders

Salahuddin argues that the state's disparate treatment of violent and nonviolent offenders violates his right to equal protection under the 14th Amendment. Under the Equal Protection Clause, "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Prisoners are not a suspect class, *Lee v. Governor of State of New York*, 87 F.3d 55, 60 (2d Cir. 1996), and Salahuddin does not claim that a fundamental personal right is implicated in the denial of parole. Thus, disparate treatment by the state in granting parole to violent and nonviolent prisoners is presumed constitutional and need only be rationally related to a legitimate state interest. *Benjamin v. Jacobson*, 172 F.3d 144, 165 (2d Cir. 1999) (en banc) (citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). Here, the state's rational basis for a distinction in parole determinations between violent and nonviolent offenders is obvious: preventing the early release of potentially violent inmates.

Accordingly, the state court's decision denying Salahuddin's equal protection claim is neither contrary to nor an unreasonable application of federal law.

13

4.        Policy of Denying Parole to Violent Offenders

Salahuddin argues that he was denied parole unlawfully, based on a policy to deny

parole to all violent offenders.  As described above, the Parole Board's decision sets forth an

individualized basis for the denial of parole.  The Parole Board is required by law to consider the

seriousness of the offense as well as the inmate's criminal history.  *See* N.Y. Exec. Law § 259-

i(2)(c).  Here, Salahuddin had been convicted of a violent crime, and as noted above, he had re-

engaged in criminal behavior after previously being on parole.  The Parole Board also considered

other factors, including Salahuddin's prospects for employment and his letters of support.  (Hr'g

Tr. 9-10.)  As held by the state court, the Board has discretion to weigh the nature Salahuddin's

offense more heavily than the positive attributes of his file, such as his letters of support.  (King

Decl. Ex. I at 2.)  Finally, the Board was clear in stating that its determination was based on the

combination of the violent nature of Salahuddin's crime along with his history of substance

abuse and his infraction in December of 2000, when he was found guilty of conspiring to assault

an inmate.  As discussed above, treating violent and nonviolent offenders differently is not

improper under the law.  Moreover, the fact that public and political pressure are behind this

policy "seems entirely permissible, as it closely relates to the statutory factor of whether 'release

is not incompatible with the welfare of society and will not so deprecate the seriousness of his

crime as to undermine respect for the law.'"  *Morel v. Thomas*, 02 Civ. 9622, 2003 WL

21488017, at * 5 (S.D.N.Y. June 26, 2003) (citing N.Y. Exec. L. § 259-i(2)(c)(A)).

Accordingly, the state court's determination that the Board's explanation was

based on the complete record of Salahuddin's history and was adequate for denial of parole is not

contrary to or an unreasonable application of federal law.

5.      "Double Standard" in Denial of Parole

Salahuddin argues that the Board used a "double standard" in his current case because he had been released on parole when he was incarcerated on a prior conviction without having "any employment skills or training," the assurance of employment, or the support of his family and his community. (Pet'n 9, 12.) Salahuddin contends that a prior Parole Board's decision to grant him parole is evidence that the Parole Board's decisions now denying him parole are improper under New York Executive Law § 259-i. The argument is without merit.

During his hearing, Salahuddin's argument was directly addressed by the Board. When Salahuddin argued that he had successfully completed parole once before, a Board member replied: "[y]ou successfully completed parole but you re-engaged in criminal behavior afterwards." (*Id.* at 12.) Salahuddin acknowledged that this was true. (*Id.*) Thus, Salahuddin was granted parole after being convicted of lesser crimes. Although he was not convicted of any crimes while on parole, he was then convicted of second degree murder and second degree manslaughter, for which he is now incarcerated. The circumstances under which he came before the Board in 2001 were completely different than the circumstances over 20 years earlier when Salahuddin was granted parole. Accordingly, the state court's decision rejecting this claim is neither contrary to nor an unreasonable application of federal law.

6.      The Ex Poste Facto Clause of United States Constitution

Salahuddin argues that changes in the parole standards in New York Executive Law § 259-i after he was incarcerated cannot be applied to him without violating the Ex Post Facto Clause. The state held that the claim was without merit because the amendment to § 259-i did not impose a new or additional obstacle to the granting of parole. Instead, it merely codified

existing case law.  The Second Circuit has held specifically rejected this claim.  *See Barna*, 239

F.3d at 171.  The Ex Post Facto Clause does not apply to guidelines that "are promulgated simply

to guide the parole board in the exercise of its discretion;" those "are not laws within the

meaning of the ex post facto clause." *Id.* (citation omitted).

Accordingly, the state court's decision that N.Y. Exec. Law § 259-i does not

violate the Ex Post Facto Clause is neither contrary to nor an unreasonable application of federal

law.

7.    The Alleged Improper Re-sentencing

Salahuddin argues that the Parole Board's alleged policy to deny parole to

prisoners convicted of violent felonies was a "re-sentence . . . without assessing statutory

mandated factors." (Pet'n at 12.)  Salahuddin was sentenced to concurrent terms of

imprisonment of twenty-five years to life and seven and one-half to fifteen years.  In other words,

the state has sentenced him to life in prison.  Neither the possibility of earlier release on parole

nor the denial of parole change that sentence.  As the Second Circuit has held, "[a] denial of

parole is a decision to withhold early release from the confinement component of a sentence.  It

is neither the imposition nor the increase of a sentence." *Alessi v. Quinlan*, 711 F.2d 497, 501

(2d Cir. 1983).  Accordingly, the state court's decision that this claim is without merit is neither

contrary to nor an unreasonable application of federal law.

7.    Denial of Effective Assistance of Counsel in Article 78 Proceeding

Finally, Salahuddin argues that he was denied effective assistance of counsel by

the counsel appointed to him for his proceeding under Article 78, New York Civil Practice and

16

Procedure Law § 7801 et seq. Respondent contends that because Article 78 proceedings are civil, rather than criminal, no Sixth Amendment protections attach. I agree.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right under the Sixth Amendment is interpreted as the right to effective assistance of counsel. *Bourdon v. Loughren*, 386 F.3d 88, 95 (2d Cir. 2004) (citing *Powell v. Alabama*, 287 U.S. 45, 71 (1932)). "But the Sixth Amendment only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions." *Id.* at 96 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987)). Article 78 is a civil remedy. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners."). Thus, Salahuddin had no Sixth Amendment right to effective assistance of counsel for his Article 78 proceeding.

Accordingly, the state court's decision denying Salahuddin's ineffective assistance of counsel claim is neither contrary to nor an unreasonable application of federal law.

<u>CONCLUSION</u>

For the foregoing reasons, the petition is denied. Because Salahuddin has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

So Ordered.

John Gleeson, U.S.D.J.

Dated: September 2, 2005
      Brooklyn, New York